**DISTRICT COURT OF MARYLAND FOR** Baltimore County ~~Docket 102~~ more County District Court - Towson

**LOCATED AT (COURT ADDRESS)**

1 Rolling Crossroads
Catonsville, MD 21228

**COMPLAINT/APPLICATION AND AFFIDAVIT
IN SUPPORT OF JUDGMENT**

☒ $5,000 or under ☐ over $5,000 ☒ over $10,000

Clerk: Please docket this case in an action of ☐ **contract** ☒ **tort**
☐ **replevin** ☐ **detinue** ☐ **bad faith insurance claim**

D-08-CV-20-032253  **CASE NO.**

**CV**

The particulars of this case are:

See attached

**PARTIES**

Plaintiff
ADISA MODUPE
21 Compass Rd
Middle River, Maryland 21220

**VS.**

Defendant(s):
1. HUNTER WARFIELD INC. C/O Ray Sherbill or David Kay 7600 Wisconsin Ave Bethesda, MD 20814 SERVE: CSC-Lawyers Incorporating Service Co. 7 St. Paul Street, Suite 820,  Baltimore, MD 21202

Serve by:
☐ Certified Mail
☒ Private Process
☐ Constable
☐ Sheriff

2.

Serve by:
☐ Certified Mail
☐ Private Process
☐ Constable
☐ Sheriff

3.

Serve by:
☐ Certified Mail
☐ Private Process
☐ Constable
☐ Sheriff

(See Continuation Sheet)

The plaintiff claims $ 1,000 , plus interest of $ _____ , interest at the ☒ legal rate ☐ contractual rate calculated at _____ %, from _____ to _____ ( ____ days x $ _____ per day) and attorney's fees of $ _____ plus court costs.

4.

Serve by:
☐ Certified Mail
☐ Private Process
☐ Constable
☐ Sheriff

☐ Return of the property and damages of $ _____ for its detention in an action of replevin.
☐ Return of the property, or its value, plus damages of $ _____ for its detention in action of detinue.
☐ Other: _____
and demands judgment for relief.

**ATTORNEYS**

For Plaintiff - Name, Address, Telephone Number & Code
Phillip Chalker
217 N. Charles St. FL 2, Baltimore, MD 21201
443-961-7345
1412161047

/s/ Phillip Chalker                    1412161047
Signature of Plaintiff/Attorney/Attorney Code    CPF ID No.

Printed Name: Phillip Chalker
Address: 217 N. Charles St. FL 2, Baltimore, MD 21201
Telephone Number: 443-961-7345
Fax: 667-303-3384
E-mail: phillip@attorneychalker.com

**MILITARY SERVICE AFFIDAVIT**

☐ Defendant(s) _____ is/are in the military service.

☒ No defendant is in the military service. The facts supporting this statement are: **Name** Defendant is a business

*Specific facts must be given for the Court to conclude that each Defendant who is a natural person is not in the military.*

☐ I am unable to determine whether or not any defendant is in military service.

I hereby declare or affirm under the penalties of perjury that the facts and matters set forth in the aforegoing Affidavit are true and correct to the best of my knowledge, information, and belief.

10/27/2020                    /s/ Phillip Chalker
Date                    Signature of Affiant

**APPLICATION AND AFFIDAVIT IN SUPPORT OF JUDGMENT** (See Plaintiff Notice on Back Page)

Attached hereto are the indicated documents which contain sufficient detail as to liability and damage to apprise the defendant clearly of the claim against the defendant, including the amount of any interest claimed.
☐ Properly authenticated copy of any note, security agreement upon which claim is based ☐ Itemized statement of account ☐ Interest worksheet
☐ Vouchers ☐ Check ☐ Other written document _____ ☐ Verified itemized repair bill or estimate
I HEREBY CERTIFY: That I am the ☐ plaintiff ☐ _____ of the plaintiff herein and am competent to testify to the matters stated in this Complaint, which are made on my personal knowledge; that there is justly due and owing by the defendant to the plaintiff the sum set forth in the Complaint.
I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the above Complaint are true and I am competent to testify to these matters.

_____                    _____
Date                    Signature of Affiant

DC-CV-001 (front) (Rev. 12/2018)

## NOTICE TO DEFENDANT
### Before Trial

**If you agree that you owe the plaintiff the amount claimed,** you may contact the plaintiff (or plaintiff's attorney) before the trial date to arrange payment. **If you wish to contest the claim,** you should notify the clerk's office by filing a Notice of Intent to Defend (located at the bottom of your summons). The case will be set for trial. If you wish to have your witnesses appear at trial, you should contact the clerk's office at least two weeks before the trial date to request subpoenas, and you should bring to court on the trial date any evidence you want the court to consider. **If you do nothing,** a judgment could be entered against you.

### If Judgment is Entered Against You (If You Lose)

IF YOU **DISAGREE** WITH THE COURT'S RULING, you may:

1. APPEAL to the circuit court, by filing a Notice of Appeal in the District Court within **30 days** after the entry of judgment. You will have to pay a filing fee (see Guide to Appeal Fees, DCA-109A), unless the court determines that you are indigent. If the amount of the claim, not counting court costs, interest, and attorney's fees, is:

   ○ **more than $5,000,** you will also have to order and pay for a transcript of the District Court trial record, by contacting the District Court clerk's office (see Transcripts & Recordings Brochure, DCA-027BR).

   ○ **$5,000 or less,** you will have a new trial in the circuit court.

   On your trial date you should bring with you any evidence that you want the court to consider.

2. File a **MOTION FOR A NEW TRIAL** within **10 days** after the entry of judgment, stating your reasons clearly. If the court denies your motion, you may still file an appeal; if the court grants your motion, you must appear in the District Court for a new trial.

3. File a **MOTION TO ALTER OR AMEND THE JUDGMENT** within **10 days** after entry of judgment.

4. File a **MOTION TO REVISE OR VACATE THE JUDGMENT** within **30 days** after entry of judgment.

IF YOU DECIDE **NOT TO APPEAL AND NOT TO FILE ONE OF THE ABOVE MOTIONS,** you may contact the plaintiff or plaintiff's attorney to arrange to pay the amount owed. If you do not pay the amount owed, the plaintiff or plaintiff's attorney may initiate further proceedings to enforce the judgment, including:

1. **Interrogatories:** You must answer these written questions about your income and assets in writing under penalties of perjury.

2. **Oral Examination:** You must appear in court to testify in response to questions about your assets and income.

3. **Writ of Execution:** The court may issue a writ requiring the sale or seizure of any of your possessions except, with some exceptions, property that is exempt from execution. The exemptions are explained in detail on the reverse side of the Writ of Execution form, DC-CV-040. Further, the court could order you to pay additional expenses such as towing, moving, storage fees, advertising costs, and auctioneer's fees incurred in executing the writ.

4. **Garnishment of Property:** The court may issue a writ ordering a bank or other agent to hold your assets until further court proceedings.

5. **Garnishment of Wages:** The court may issue a writ ordering your employer to withhold a portion of your wages to pay your debt. The law provides certain exemptions from garnishment.

**If you have any questions, you should consult an attorney. The clerk of the court is not permitted to give you legal advice. More information can be found in court brochures located in the clerk's office or online at: http://www.mdcourts.gov/district/public_brochures.html.**

## NOTICE TO PLAINTIFF

REQUESTING A JUDGMENT BY AFFIDAVIT OR DEFAULT:

Federal Law requires the filing of a military service affidavit. Information about the Servicemembers Civil Relief Act and the required affidavit can be found on the court's website at: http://mdcourts.gov/reference/scra.html.

AFTER THE COURT ENTERS A JUDGMENT:

1. If the court enters a judgment for a sum certain, you have the right to file for a lien on real property.

2. If you disagree with the outcome of the case, you have the same post-trial rights as the defendant does: you may file an Appeal, a Motion for New Trial, a Motion to Alter or Amend the Judgment or a Motion to Revise or Vacate the Judgment. See above for further information concerning these rights.

| | | |
|---|---|---|
| ADISA MODUPE, | * | IN THE |
| 21 Compass Rd | | |
| Middle River, Maryland 21220 | * | DISTRICT COURT FOR |
| | | |
| **Plaintiff,** | * | BALTIMORE COUNTY |
| | | |
| v. | * | Case No. |
| | | |
| HUNTER WARFIELD INC. | * | |
| C/O Ray Sherbill or David Kay | | |
| 7600 Wisconsin Ave. | * | |
| Bethesda, MD 20814 | | |
| | * | |
| Serve On: | | |
| CSC-Lawyers Incorporating | * | |
| Service Company | | |
| 7 St. Paul Street, Suite 820 | * | |
| Baltimore, MD 21202 | | |
| | * | |
| **Defendant** | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## CLASS ACTION COMPLAINT

Plaintiff Adisa Modupe ("Modupe"), by and through her undersigned counsel, files this

Complaint and in support of states as follows:

## PARTIES

1.  Plaintiff, Modupe, is a resident of Baltimore County, Maryland.

2.  Defendant, Hunter Warfield is debt collector that is an incorporated business from

    Florida, that regularly conducts business in Baltimore County Maryland.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to 15 U.S.C §1692k(d) because the suit is for a

    violation Fair Debt Collection Practices Act.

4.  Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events

    giving rise to this action occurred in Maryland. Specifically, Defendant or their agents

intentionally attempted to collect a debt in Baltimore County, Maryland thereby causing harm to Plaintiff.

## STATEMENT OF FACTS

5.   Modupe signed a residential lease on April 1, 2017 with Owings Chase Apartments, LLC (OCA).

6.   She paid a security deposit of $100.

7.   The lease provides that "Unless a party is seeking exemplary, punitive, or sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorneys' fees and all other litigation costs." Ex. 1.

8.   Modupe has since moved out of and terminated her tenancy at Owings Chase Apartments.

## COUNT I
### MD Code Anne. Comm Law §14-201 et seq.

9.   Plaintiff incorporates the previous paragraphs into Count I.

10.  The Maryland Consumer Debt Collection Act (MCDCA) states debt collectors cannot "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." MD Code Anne. Comm Law §14202(8).

11.  Further it is a violation of the MCDCA to violate sections 804 through 812 of the federal Fair Debt Collection Practices Act.

12.  15 USC 1692e, which is §807 of the FDCPA prohibits false representation of the character and amount of a debt.

13.  Defendant is a large national company that regularly collects debts from tenants in Maryland.

14.  Hunter attempted to collect a debt that it knew did not exist when it attempted to collect

interest of 8 percent on a lease that provided for interest of 18 percent and when State law limits interest to 5 percent.

15.     15 USC 1692f, which is §808(1) of the FDCPA states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt", which includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

16.     Defendant attempted to collect usurious interest.

17.     As the direct and proximate result of Defendant's action, the Plaintiff has suffered economic injury.

## COUNT II
## Fair Debt Collection Practices Act

18.     Plaintiff incorporates the previous paragraphs into Count II.

19.     15 USC 1692e, which is §307 of the FDCPA prohibits false representation of the character and amount of a debt.

20.     Defendant attempted to collect a debt that it knew did not exist when it attempted to collect interest of 8 percent on a lease that provided for interest of 18 percent and when state law limits interest to 5 percent.

21.     15 USC 1692f, which is §808(1) of the FDCPA states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt", which includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

22.     Defendant attempted to collect usurious interest.

23.     As the direct and proximate result of Defendant's actions, Plaintiff and the class she seeks

to represent have suffered economic injury.

## COUNT III
## Maryland Consumer Protection Act

24.     Plaintiff incorporates the previous paragraphs into Count III.

25.     OCA provided Defendant with a lease that articulated 18 percent interest could be charged

on debts owed by a tenant after termination of the tenancy.

26.     Thereafter Defendant attempted to collect the alleged debt owed.

27.     Defendant attempted to collect a debt that it knew did not exist when it attempted to collect

interest of 8 percent on a lease that provided for interest of 18 percent and when state law

limits interest to 5 percent.

28.     In doing so, Defendant sent Plaintiff written communication concerning the debt.

29.     Md. Code Anne. Comm. Law §13-301(1) states that it unfair, abusive, or deceptive trade

practices to "include any false ... or misleading oral or written statement...or other

representation of any kind which has the capacity, tendency, or effect of deceiving or

misleading consumers."

30.     A consumer is an actual or prospective purchaser, lessee, or recipient of consumer goods,

consumer services, consumer realty, or consumer credit Md. Code Anne. Comm. Law §13-

101(c)(1).

31.     Consumer realty is real property primarily used for personal, household, family or

agricultural services. Md. Code Anne. Comm. Law §13-101(d)(1).

32.     All the transactions that occurred between Plaintiff and Defendants are related to consumer

realty.

33.    Pursuant to Md. Code Anne. Comm Law §13-303 A person may not engage in any unfair, abusive, or deceptive trade practice in "the sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;… or the collection of consumer debts."

WHEREFORE, Plaintiff Modupe Adisa respectfully prays for the following relief:

A.    That this Court enter judgment for monetary damages in favor of the Plaintiff for $1,000;

B.    That this Court award to the Plaintiff the costs of these proceedings and a reasonable attorneys' fee;

C.    That this Court order such other and further relief as the nature of this case may require.

Respectfully Submitted,

*Phillip Chalker*

Phillip Chalker
CPF: 1412160147
The Law Office of Phillip E. Chalker
217 N. Charles St. FL 2
Baltimore, MD 21201
Ph: 443-961-7345      Fx: 667-303-3384
phillip@attorneychalker.com

HUNTER WARFIELD

4620 Woodland Corporate Blvd
Tampa, FL 33614
866-494-9902

May 27, 2020

MODUPE ADISA
21 COMPASS RD
MIDDLE RIVER, MD 21220



Villas at 4607

Villas at 4607

4607-F Old Court Rd
BALTIMORE, MD 21208

4608-D

7983995

$14.58

$816.25

Enclosed is verification of the debt.

As of the date of this letter you owe $816.25. Because of interest at the rate of 8.00%, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you. Please contact our office for your payoff.

If this debt is not resolved, it may be reported to one or more of the following national credit reporting agencies: Equifax, TransUnion and Experian. If your debt is reported to the credit bureaus this could adversely affect your credit.

Should you need to contact me for any reason, I can be reached by dialing 866-494-9902. Hours of operation Mon – Fri 8am to 5pm EST.

Sincerely,
Hunter Warfield, Inc.

This communication is made for the limited purpose of responding to your dispute and is NOT an attempt to collect a debt.
See reverse side for important information.
4620 Woodland Corporate Blvd | Tampa, FL 33614
supportservices@hunterwarfield.com | www.payhwi.com

9350711/VOD/153931

**FEDERAL AND STATE DEBT COLLECTION LAWS AND/OR THE FAIR CREDIT REPORTING ACT REQUIRE THE FOLLOWING DISCLOSURES:**

Required by Fair **Credit Reporting Act:** You have the right to inspect your credit report.

CALIFORNIA: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collector may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. Nonprofit credit counseling services may be available in the area.

COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any further action authorized by law to collect the debt. Colorado office: Colorado Manager, Inc., Building 5, 80 Garden Center, Ste 3, Broomfield, CO 80020. (303) 920-4763.

IDAHO: Managers can be reached at 1-866-494-9902, Mon.-Fri. 8am to 5pm, EST.

MASSACHUSSETTS: Send payments to Hunter Warfield of New England, Inc., 4620 Woodland Corporate Blvd., Tampa, FL 33614.  Office hours: 8am – 5pm EST. Monday – Friday.
NOTICE OF IMPORTANT RIGHTS:
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE AT YOUR PLACE OF EMPLOYMENT.  ANY SUCH ORAL REQUEST WILL BE VALID FOR TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST.  YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

MAINE: Hours of operation are Mon. - Fri. 8am-5pm, EST. We can be reached at 866-494-9902

MINNESOTA: This collection agency is licensed by the Minnesota Department of Commerce.

NORTH CAROLINA: North Carolina Department of Insurance Permit Number 4129 and 104133.

STATE OF NEW YORK: In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:  the use or threat of violence, the use of obscene or profane language, and repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:  supplemental security income (SSI), social security, public assistance (welfare), spousal support including maintenance (alimony) or child support, unemployment benefits, disability benefits, workers' compensation benefits, public or private pensions, veterans' benefits, federal student loans, federal student grants, federal work study funds, and ninety percent of your wages or salary earned in the last sixty days.

CITY OF NEW YORK: New York City Department of Consumer Affairs License Number 1197082. Collection manager, Mike Geary, can be reached at 1-866-494-7360, Mon. - Fri. 9am to 5pm, EST.

TENNESSEE: This collection agency is licensed by the Tennessee Collection Services Board.

UTAH: As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation. We will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period.

WISCONSIN: This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.



Villas at 4607
4607 Old Court Rd
Pikesville, MD 21208

| | |
|---|---|
| Statement Date: | Oct 25, 2019 |
| Outstanding Balance: | $801.67 |

Modupe Adisa
21 COMPASS RD
MIDDLE RIVER, MD 21221

| | |
|---|---|
| **Lease:** | 13910022 |
| **Unit:** | 4608 Debilen Circle D |
| **Move In Date:** | 04/01/2017 |
| **Lease Start Date:** | 04/01/2019 |
| **Lease End Date:** | 03/31/2020 |
| **Notice Given Date:** | 09/24/2019 |
| **Move Out Date:** | 10/07/2019 |

### Lease Holders

| Name | Occupant Type |
|---|---|
| Modupe Adisa | Primary |

### Outstanding Charges

| Date | Description | Notes | Amount | Taxes | Total Amount |
|---|---|---|---|---|---|
| 10/06/2019 | Late Fees | | $14.55 | $0.00 | $14.55 |
| 10/01/2019 | Rent | | $291.00 | $0.00 | $291.00 |
| 09/24/2019 | Month to Month | Month to Month fee for June through September. | $596.12 | $0.00 | $596.12 |

|  |  |
|---|---|
| **Total Unpaid Charges:** | **$901.67** |

### Repayment Agreements

| ID | Start Date | End Date | Payments Due | Payment Amount | Due Now | Balance |
|---|---|---|---|---|---|---|

| ID | Start Date | End Date | Payments Due | Payment Amount | Due Now | Balance |
|---|---|---|---|---|---|---|
| | | | Total Repayment Agreement Balance: | | | $0.00 |

## Deposits

| Date | Description | Amount |
|---|---|---|
| 04/01/2017 | Security Deposits | $100.00 |

Total Deposits Held:   $100.00

## Unapplied Payments / Credits

| Date | Description | Notes | Amount | Taxes | Total Amount |
|---|---|---|---|---|---|

Total Unapplied Payments / Credits:   $0.00

Outstanding Balance:   $801.67

Owings Chase Apartments

# APARTMENT LEASE CONTRACT

**(APARTMENT LEASE CONTRACT DECLARATION PAGES
TO BE ATTACHED TO THIS PAGE)**

I acknowledge receipt of this
Apartment Lease Contract

_____
Resident

## OWINGS CHASE APARTMENTS

Apartment Lease Contract Declaration Pages

Date of Apartment Lease Contract: __April 1, 2017__

## THIS IS A BINDING DOCUMENT -- READ CAREFULLY BEFORE SIGNING

1.    **PARTIES.**    This Apartment Lease Contract (the "Lease") is between *you*, __Modupe Adisa__         , the resident(s)/tenant(s) ("Resident" or "Tenant") and Owings Chase Apartments, owner and landlord ("Landlord") of the improved residential real estate known as Owings Chase Apartments.    You have agreed to rent Apartment No. __1608-D__ at __Debilen Circle__         (the "Apartment") for use as a private residence only. The terms "Resident", "Tenant," "you" and "your" refer to all residents listed above. The terms "Landlord", "we," "us," or "our" refer to the landlord/owner listed above. The premises you are renting will be made available to you in a condition permitting habitation, with reasonable safety.

2.    **OCCUPANTS.**    The Apartment will be occupied only by you and (*list all other "Occupants" not signing the Lease*):

| Name | Age | Sex | Relationship to Leasee |
|------|-----|-----|------------------------|
| Michael Adisa |  | M | Son |
| Joseph Adisa |  | M | Son |
| Emmanuel Adisa |  | M | Son |

(Age, Sex and Relationship information is required for identification purposes only)

No one else may occupy the Apartment. Persons not listed above must not stay in the Apartment for more than fifteen (15) consecutive days without our prior written consent, and may stay in the Apartment no more than twice that many days during the Lease term.

3.    **LEASE TERM.** The initial term of the Lease begins on the __1st__ day of __April 2017__ and ends at midnight the __31st__ day of __March 2018__     , (the "Lease Term").

_M.O_

This Lease will automatically renew on a yearly renewal unless either party gives at least sixty (60) days (the "Advance Notice Deadline") written notice of termination or intent to move out as required by Paragraph 35.  Please review Paragraph 35 pertaining to Rent Increases and Lease Contract Changes.

_M.O_

4.    **SECURITY DEPOSIT.**  A security deposit in the amount of $ __100.00__, is being held in escrow for you.

This Lease will constitute your receipt for the security deposit.  Your security deposit will be deposited and held in an interest-bearing account in a federally insured banking institution.  See Paragraphs 40 and 41 for security deposit return information.

1

5.     RENT AND CHARGES.  You will pay $1240.00   per month for rent and charges, payable in advance and without demand.

You are taking possession of the Apartment on 4. 1. 2017.  Your first payment in the amount of $1240.00 shall cover the period from the date you take possession through the end of that month. Thereafter, you must pay your rent on or before the first (1st) day of each month (the "due date") you reside in the Apartment for the duration of the Lease, including all extensions, with no grace period. Payment by cash is not accepted.  You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums by certified or cashier's check, money order, or one monthly check rather than multiple checks.  If you do not pay all rent on or before the fifth (5th) day of the month (grace period), you will pay a late charge of five percent (5.0%) of the monthly rent listed in this paragraph.  You will also pay a charge of all applicable court and legal fees if we do not receive acceptable payment prior to the fifth (5th) day of the month.  In the event that your check is returned you will pay a charge of thirty-eight dollars ($38.00) in addition you may be required to make any and all subsequent payments by certified or cashier's check or money order.  If you do not pay rent on time, you will be in default, and all remedies under the Lease will be authorized.  All sums of money or other charges, including payments for court fees and/or repairs, required to be paid by you to us or any other persons under the terms of this Lease, whether or not the same is designated as "rent" or as "additional rent," will be deemed to be rent and will be collectible as such.

6.     PARKING.  If reserved parking is provided, a separate addendum will be required. Otherwise, parking is on a first come, first available basis.  The provisions of Paragraphs 3, 16 and 24 of this Lease apply to your parking space.

7.     UTILITIES.  You will be responsible for payment for utilities as set forth in the Utility Addendum; for each utility for which you are responsible for payment, you will pay related deposits and any charges, fees or services on such utilities.  You must not allow utilities to be disconnected – including disconnection for not paying your bills – until the lease term or renewal period ends.  Utilities may be used only for normal household purposes and must not be wasted.  If our electricity is ever interrupted, you must use only battery-operated lighting.  If any utilities are sub-metered for the Apartment you must pay such billings promptly.  If the billing company requires us to pay your bills, we will add the amount of such bills to your rent and treat such amounts as additional rent for all purposes, including taking possession of your Apartment for nonpayment.



8.     INSURANCE AND SAFETY.  The Landlord does not carry any insurance on your personal possessions.  You are required to obtain your own insurance for losses due to theft, fire, water damage, and the like.  You should be aware that such insurance protects you personally from claims by us and others (including residents and guests) for damages and lost rent resulting from your negligence.  Without such insurance, you may be personally liable to pay such claims.  See Paragraph 42 Casualty Loss which specifies the minimum liability insurance coverage required by the resident.

I have reviewed and agree to abide by the terms of Paragraph 42 of the Lease concerning Smoke/CO2 Detector and Tenant's requirement to obtain Liability Insurance Coverage of $100,000.

9.    **CONDITION OF THE APARTMENT AND ALTERATIONS.** You accept the Apartment, fixtures, and furniture as is, except for conditions materially affecting the life, health or safety of ordinary persons. You will be given a Move-In Inspection Form on or before move-in. Within seven (7) days after move-in, you must note on the Move-In Inspection Form all defects or damage and return the form to our representative. If you fail to timely return the form, everything in the Apartment will be considered to be in a clean, safe, and good working condition. The Apartment will be made available to you in a condition permitting habitation, with reasonable safety.

You must use customary diligence in maintaining the Apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, carpeting, electrical changes, or otherwise alter our property. We do permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, Resident-owned or –leased washing machines, alarm systems, or lock changes, additions, or re-keying is permitted unless statutorily allowed or we have consented in advance in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we will supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the Apartment. For as long as you reside in the Apartment, you will replace light bulbs at your expense with bulbs of the same type and wattage. Your improvements to the Apartment (whether or not we consent) become ours unless we agree otherwise in writing.

10.    **MULTIPLE RESIDENTS OR OCCUPANTS.** Each Resident is jointly and severally liable for all Lease obligations. If you or any guest or Occupant violates the Lease or rules, all Residents are considered to have violated the Lease. Our requests and notices to any Resident constitute notice to all Residents and Occupants. Notices and requests from any Resident or Occupant (including repair requests and entry permissions) constitute notice from all Residents. In eviction suits, each Resident is considered the agent of all other Residents in the Apartment for service of process. Security deposit refunds and deduction itemizations of multiple Residents will comply with Paragraphs 40 and 41. Your notice to vacate must be signed by all Residents or it will not be considered valid.

11.    **COMMUNITY POLICIES OR RULES.** You and all guests and Occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease. We may make reasonable changes to written rules effective immediately if they are in writing and distributed to Residents.

12.    **LIMITATIONS ON CONDUCT.** The Apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances and our rules and regulations. Passageways may be used only for entry or exit. Glass containers are prohibited in all common areas. No baby carriages, tricycles, bicycles or other articles of personal property may be stored, deposited, allowed or permitted on the patios or balconies of the building, or passageways, parking areas, courts, sidewalks, lawns or other areas of the Apartment Community. You, your Occupants, or guests may not, anywhere in the Apartment Community: (a) use candles or use kerosene lamps or kerosene heaters without prior written approval; (b) cook on balconies or outside; or (c) solicit business or contributions. Conducting any kind of business (including child care services) in your Apartment or in the Apartment Community

3

is prohibited – except that ___ ___ business conducted "at home" by computer, mail, or telephone is permissible if customers, ___ ___, patients, or other business associates do not come to your Apartment for business purp___. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You will be liable to us for ___ ___ caused by you or any guests or Occupants.

We may exclude from ___ Apartment Community guests or others who, in our sole judgment, have violated the law, violated ___ Lease or any Apartment Community rules, or disturb other residents, neighbors, visit___ ___/or Landlord's representatives, employees or agents. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or ___ ___ as a resident or as an Occupant or guest of a specific resident in the Community.

13.    PROHIBIT___ CONDUCT. You and your Occupants and/or guests may not engage in the following ___ ___ (a) behaving in a loud or obnoxious manner; (b) disturbing or threatening the rights, comfort ___ ___, safety, or convenience of others (including our agents and employees) in or near the ___ ___ Community; (c) disrupting our business operations; (d) manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; (e) engaging in or threatening violence; (f) possessing a weapon prohibited by state law; (g) ___ ___ a firearm in the Apartment Community; (h) displaying or possessing, without proper per___ ___ gun, knife, or other weapon in the common area in a way that may alarm others; (i) storing ___ ___ in closets having gas appliances; (j) tampering with utilities or telecommunications; (k) bringing ___ hazardous materials into the Apartment Community; or (l) injuring our reputation by making ___ ___ allegations against us to others; (m) engaging in any conduct which is unlawful or which constitute ___ ___ harassment (whether sexual or directed to or against any person based on that person's protected ___ ___).

You must not permit or allow any family member, agent, employee, guest or invitee to loiter or play in the elevators, lobby, corridors, landings, stairs, lawns, parking areas, entrances, garage, basement or roof areas. You must keep all doors leading from and into the Apartment closed at all times, and we reserve the ___ ___ close all such doors in the event of a violation of this provision. You may not make or per___ ___ disturbing noises that unreasonably interfere with the rights, comforts or convenience of ___ ___ tenants. You must keep the volume of any radio, television or musical instrument in the ___ ___ sufficiently low at all times so as not to disturb other tenants in the Apartment Communi___ ___ may not conduct or permit any vocal or instrumental practice or instruction that disturbs ___ ___.

14.    ANIMALS ___ ___ ANIMALS. No animals (including mammals, reptiles, rodents and insects) are allow___ even temporarily, anywhere in the Apartment or Apartment Community unless we have ___ ___ authorized in writing. If we allow an animal, you must sign a separate Animal Addendum and pa___ ___ ___ rent.

If you are blind ___ ___ ear and have a service dog, certified as being specially trained to aid your disability, and you ___ ___ such certification, you may choose to have the service dog reside in your Apartment, walk w___ ___ the grounds of the Apartment complex or enter any building or facility on the Apartment ___ ___. We will also authorize a service animal, other than a dog, for a disabled person upon writt___ ___ and a satisfactory statement of need for accommodation. We may require a written statem___ ___ ___ a qualified professional verifying the need for the service animal.

4

You must not feed stray or wild animals in the Apartment Community.

15.     RECREATIONAL FACILITIES.  All persons using any recreational facilities of the Apartment Community do so at their own risk and sole responsibility.  We do not assume responsibility for any accident or injury in connection with such use.  We are not liable for failure to operate the swimming pool or any other recreational facility provided, and we reserve the right to close all or any portion of the recreational facilities at any time in our sole discretion, and you will not be entitled to a reduction in rent if your right to use such facilities is interrupted or discontinued.  You agree to comply with and/or cause your designated Occupant(s) and their respective agents, employees, invitees and guests to comply with all rules, regulations and procedures adopted by us regarding the access to, and availability, use and operation of, recreational facilities.  Failure to comply with and/or cause your designated Occupant(s) and their respective agents, employees, invitees and guests to comply with all such rules, regulations and procedures shall be a material breach of this Lease.

16.     PARKING.  If we maintain unassigned parking for which no charge is made, the unassigned parking may be used only by you on a first come first served, non-exclusive, no-reservation basis.  We reserve the right to make rules for the use of all parking; to place limitations upon use of parking at any time after the beginning of the term of this Lease; to issue parking stickers for identification of valid vehicles; to institute a reasonable charge for such use at any time after the beginning of the Lease Term; and to make changes in the rules, regulations and charges from time to time.  No representation is made that sufficient garage or parking space is available for all residents or that the present number of spaces will always be available.

You and your designated Occupant(s) and/or their respective agents, employees, invitees and guests must observe all parking rules and regulations as posted or indicated by us and/or local authorities.  Parking of vehicles in other than designated parking areas is prohibited.  No boats, trailers, trucks, buses, or commercial vehicles will be permitted on the parking lots, or driveways without prior written permission.  Motorcycles must be parked in areas designated for motorcycles.  Parking and/or driving on grass or the placement of any type of vehicle on a patio or balcony is prohibited.  The parking areas are for use only by properly tagged, functioning and authorized motor vehicles.  Any vehicle that does not comply with the foregoing provisions will be towed away at the vehicle owner's risk and expense.  The repair, maintenance, washing and/or testing of motor vehicles and/or their engines anywhere within the Apartment Community is strictly prohibited unless we designate a specific area for such purpose.  You agree to remove or cause to be removed any of your vehicles, or your designated Occupants' vehicles, from the parking areas promptly upon the expiration or termination of this Lease or your right to possession of any Apartment(s).  The parking of vehicles in violation of the terms of this Lease, thereby requiring the vehicles to be towed, will constitute a material breach of the terms of this Lease.

We may have unauthorized or illegally parked vehicles towed under an appropriate statute.  A vehicle is unauthorized or illegally parked in the Apartment Community if it:

(a)     has a flat tire or other condition rendering it inoperable;
(b)     is on jacks, blocks or has wheel(s) missing;
(c)     has no current license or no current inspection sticker;
(d)     belongs to a Resident or Occupant who has surrendered or abandoned the Apartment;

5

(e)    is parked in a marked handicap space without the legally required handicap insignia;
(f)    blocks another vehicle from exiting;
(g)    is parked in a fire lane or designated "no parking" area;
(h)    is parked in a space marked for other resident(s) or unit(s), or the vehicle blocks or occupies more than one space;
(i)    is parked on the grass, sidewalk, or patio; or
(j)    blocks garage door entrances or garbage trucks from access to a dumpster.

You hereby irrevocably constitute and appoint us as your attorney-in-fact to remove any vehicle parked in violation of this Lease, parking rules or regulations and to store the vehicle, at your cost and expense, in such place or places as we, in our sole discretion, may deem proper, or to dispose of the vehicle in the manner provided by applicable law. A lien for the costs and expenses of towing and storing a vehicle may be enforced by us (or our agent) in the manner and to the extent provided under applicable law. You agree to indemnify and hold us harmless from claims and all costs and expenses incurred, including but not limited to reasonable attorney's fees, resulting from the towing of motor vehicles belonging to you, your designated Occupant(s) and/or their respective agents, employees, invitees or guests.

17.    STORAGE SPACES. In the event that we provide you with a storage space, external to the Apartment, at any time during the Lease Term, you understand that we are providing such storage space gratuitously. Your use of any storage space is subject to the terms of this Lease, any signed Storage Space Addendum and any applicable Apartment Community rules and regulations. Mechanical rooms, equipment rooms, electrical rooms and meter rooms are not designated storage areas and items discovered in these rooms will be removed and disposed of by the Landlord.

18.    DELAY OF OCCUPANCY. If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we are responsible for the delay only to the extent provided by law. The Lease will remain in force subject to: (a) abatement of rent on a daily basis during delay; and (b) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any prepaid, unearned rent. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that do not prevent you from occupying the Apartment, such cleaning or repairs do not materially affect the life, health or safety of ordinary persons, and habitation is possible with reasonable safety.

If there is delay in providing you with possession of the Apartment, you may terminate, cancel, or rescind your Lease up to the date when the Apartment is ready for occupancy (the time at which we are ready to deliver possession to you) but not later.

19.    PAYMENTS. Your agreement to pay all sums due under this Lease Contract or related addenda is an independent covenant. At our option and without notice, we may apply money received first to any of your unpaid obligations, then to current rent – regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand.

20.    LOCKS AND LATCHES. Keyed lock(s) will be re-keyed after the prior resident moves out. The re-keying will be done either before you move in or, if the Apartment has a keyless deadbolt on each exterior door, within ten (10) days after you move in.

**Lockouts.** In the event that you are locked out of the Apartment during Landlord's normal business hours, Landlord will, if you personally present yourself and have a government-issued ID acceptable to Landlord, provide access to the Apartment or provide a key. The "emergency" key shall not be given to a person who is not named on the Lease Contract as a Resident or Occupant. In the event that you are locked out of the Apartment after Landlord's normal business hours, you should contact a locksmith to gain access to the Apartment. If you or your locksmith changes the lock, you must provide a key to Landlord on the following day. You will pay, in advance, for all costs (if any) associated with any lockout service.

**Paying for Re-keying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to security devices by you or your family, Occupants, or guests during your occupancy. You may be required to pay in advance if: (a) we notify you within a reasonable time after your request that you are more than thirty (30) days delinquent in reimbursing us for repairing or replacing a security device which was misused or damaged by you, your guest or an Occupant or; (b) if you have requested that we repair, install, change or re-key the same security device during the thirty (30) days preceding your request and we have complied with your request. If you fail to return keys at the termination of your tenancy, you will be responsible for re-keying charges for all locks.

21. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or costs of repairs or service in the Apartment Community due to a violation of the Lease or rules, improper use, or negligence by you or your guests or Occupants. We are not liable for – and you must pay for – repairs, replacement costs, and damage to the following if occurring during the Lease Term or renewal period: (a) damage to doors, windows, or screens; (b) damage from windows or doors left open; and (c) damage from wastewater stoppages caused by improper objects in lines exclusively serving your Apartment, unless the above-listed damage is due to our negligence. We may require payment at any time, including advance payment of repairs for which you are liable. Delay in demanding sums you owe is not a waiver.

22. **RELEASE OF RESIDENT.** You may terminate this Lease upon sixty (60) days written notice and upon receipt of a termination fee which is equal to the sum of one month rent. Unless you are entitled to terminate this Lease under any provision of Maryland law, Paragraphs 3, 27, 28 or as set forth above, you will not be released from this Lease for any reason – including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary job transfer, marriage, separation, divorce, reconciliation, or loss of co-Residents.

23. **EARLY MOVE-OUT.** You will be liable to us for all damages we suffer including rent, late charges and damages to the Apartment if you:

    (a)    fail to give written move-out notice as required in Paragraph 3;
    (b)    move out without paying rent in full for the entire Lease Term or renewal period;
    (c)    move out at our demand because of your default; or
    (d)    are judicially evicted.

24. **DEFAULT BY RESIDENT.** You will be in default if:

    (a)    you do not pay rent or other amounts that you owe;
    (b)    you or any guest or Occupant violates this Lease, Apartment Community rules, or fire, safety, health, or criminal laws, regardless of whether an arrest or conviction occurs;

(c)    you abandon the Apartment;
(d)    you give incorrect or false information in a rental application;
(e)    you or any Occupant is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under any state statute; and/or
(f)     any illegal drugs or paraphernalia are found in your Apartment or on your person while on the Apartment Community's grounds.

**Eviction.** If you are in default, we may seek to end your right of occupancy by giving you a written notice to vacate in accordance with Maryland law and local county and city ordinances. We are not required to provide notice of non-payment of rent, and we may proceed to institute eviction proceedings at any time your rent is overdue. Notice may be by (a) regular mail; (b) certified mail, return receipt requested; (c) personal delivery to any Resident; (d) personal delivery at the Apartment to any Occupant over sixteen (16) years old; or (e) affixing the notice to the outside of the Apartment's main entry door. Termination of your possession rights or subsequent re-letting does not release you from liability of your Lease obligations, subject to your and our duties to mitigate damages as provided by this Lease or by applicable law. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due if allowed under applicable state or local law; the filing or acceptance does not waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time does not waive our rights to damages; past or future rent or other sums; or to continue with eviction proceedings.

**Holdover.** You or any Occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different date agreed to by the parties in writing). If a holdover occurs, then: (a) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (b) rent for the holdover period will be increased by twenty-five percent (25.0%) over the then-existing rent, without notice; (c) you will be liable to us for any and all loss rent resulting from the effect of your holdover causing a new resident to be unable to occupy the Apartment because of your holdover; and (d) we may bring an action for eviction and for damages in conformance with the Maryland Real Property Code or applicable county or city ordinances.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated on any attached Rental Concession Addendum to be rental discounts or abatements, in addition to other sums due. Such rental discounts, if any, were conditional upon your compliance with all rental obligations under this Lease and with the terms of the Rental Concession Addendum, or as otherwise provided by law. Upon your default, we have all other legal remedies, including lease termination. In the event that we obtain the service of an attorney and take legal action against you in connection with any breach by you of any of the terms or conditions of this Lease, you covenant and agree to pay us reasonable attorney's fees, plus all court costs, the costs of any special process server employed by us, and all other additional costs that may be incurred, as a court or tribunal of competent jurisdiction may award. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorneys' fees and all other litigation costs. All unpaid amounts after termination of your tenancy bear interest at the rate of eighteen percent (18.0%) per annum. You must pay all collection agency fees if you fail to pay all sums due within ten (10) days after we mail

you a letter demanding payment and stating that collection agency fees will be added if you do not pay all sums by that deadline.

24.     **SURRENDER AND JUDICIAL EVICTION.** You have surrendered the Apartment when all Apartment keys and access devices have been turned in to the Landlord.

Surrender and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and re-let the Apartment; determine any security deposit deductions; and remove property left in the Apartment. If the Apartment is surrendered or you are judicially evicted from the Apartment, any property left in the Apartment shall be considered abandoned and may be disposed of by the Landlord.

25.     **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** Once this Lease is terminated by action of the parties or operation of law, and all property therein is abandoned, all property in the Apartment is (unless not permitted or exempt under state law) subject to a contractual lien to secure payment of delinquent rent, as provided by the Real Property Article of the Annotated Code of Maryland.

**Removal After Surrender or Eviction.** To the extent permitted by law, we or law officers may remove all property remaining in the Apartment or in common areas (including any vehicles you or any Occupant or guest owns or uses) if you are judicially evicted or if you surrender the Apartment.

26.     **MILITARY CLAUSE.** Under the following circumstances, you may terminate the Lease by giving us written notice ("Termination Notice") if you:

(a)     enter into "military service" as that term is defined in 50 USCS Appx § 511; or

(b)     receive military orders for a change of permanent station or to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 90 days; or

(c)     receive military orders for a permanent change of station:

(i)     from a location in the continental United States to a location outside the continental United States; or

(ii)     from a location in a State outside the continental United States to any location outside that State.

The Termination Notice is effective 30 days after the first date on which the next rental payment is due and payable after the date on which the notice is delivered. You must furnish us either a copy of the official permanent change-of-station orders or a deployment letter or order. Military permission for base housing does not constitute a permanent change-of-station order. After move-out, you are entitled to return of your security deposit less lawful deductions. The release of a Resident under this military clause will release the Resident receiving the change-of-station or deployment orders and such Resident's spouse or legal dependents, but not any remaining co-Residents.

27.    **DEATH, INCAPACITATION OR LEGAL DISABILITY.** Upon your death (or any one or more persons comprising the residents hereunder), the Lease shall automatically terminate. It is understood and agreed that no interest in the Lease, the leasehold estate created hereby or the apartment will pass to your heirs, administrators or assigns by will, intestacy, gift or grant. If the Lease is terminated by virtue of your death, the termination of the Lease shall not relieve your estate from responsibility for payment of your outstanding obligations under the Lease, nor for the payment for the use and occupancy of the apartment during the administration of the estate until the apartment is actually vacated by all occupants, guests or invitees, including any remaining persons identified as residents herein.

28.    **DISCLOSURE RIGHTS.** If someone requests information about you or your rental history for law-enforcement, governmental, or business purposes, we may provide such information if we receive a signed release and/or a commonly recognized subpoena.

29.    **REQUESTS, REPAIRS, AND MALFUNCTIONS.** If you or any occupant needs to send a notice or request – for example, for repairs, installations, services, or security related matters, it must be signed and in writing to our designated representative (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Any of our written notes regarding your oral request do not constitute a written request from you.

30.    **LANDLORD's RESPONSIBILITIES.** We will act with customary diligence to:

(a)    keep common areas reasonably clean, subject to Paragraph 9;
(b)    maintain fixtures, facilities, furniture, hot water, heating and A/C equipment;
(c)    substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(d)    make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

31.    **WHEN WE MAY ENTER.** If you or any guest or Occupant is present, then repairers, servicers, contractors, our representatives, employees or other persons listed in (b) below may peacefully enter the Apartment at reasonable times for the purposes listed in (b) below. If nobody is in the Apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(a)    written notice of the entry is left in a conspicuous place in the Apartment immediately after the entry; and

(b)    entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or re-keying unauthorized security devices; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing Apartment to prospective

10

Residents (after move-out or vacate notice has been given); showing Apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents; or in connection with inspection, response to, or compliance with any citation for any alleged housing code violation.

(c)     We may enter the Apartment after due notice to you and without reasonable objection during business hours. Except in the event of an emergency, affecting the health, safety, or welfare of the Landlord or any tenant or any property thereof, we will provide at least twenty-four (24) hours advance written notice of our intent to enter for the above purposes. We may enter the Apartment immediately without notice under the following circumstances: an emergency situation; when we have good cause to believe you may have damaged the Apartment; if we reasonably believe you are in violation of federal, state or county laws; to stop excessive or unreasonable noise that is disturbing the quiet enjoyment of other residents; to remove health or safety hazards or; to deal with or respond to any situation which is of immediate threat or danger to the health, safety or welfare of our residents or their property, an animal, or our Apartment Community and your Apartment.

(d)     You are deemed to have given us permission to enter your Apartment in connection with any request for services, maintenance, or repairs or to respond to housing code complaints. You agree to cooperate fully in providing us access to your Apartment for the same without delay or interference.

32.    MISCELLANEOUS. You submitted an application to us to induce us to execute this Lease. In the event that any of the representations in your application are found to be misleading, incorrect or untrue, we shall have the right to treat such misleading, incorrect or untrue representation as a breach of this Lease. Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease, executed addenda, and published rules and regulations are the entire agreement between you and us. Our representatives (including Landlord's personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written notice requirements, rental due dates, acceleration limits, or other rights is not a wavier under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our employees constitutes notice to or from us. Any person giving a notice under this Lease should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed. Notices may not be given by email.

Exercising one remedy will not constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease. All notices and documents may be in English and, at our sole option, in any

11

language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease obligations must be performed in the county where the Apartment is located.

33.   **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases are allowed before the initial Lease Term ends. All terms and conditions of renewal shall be the same as the initial term, except as may be otherwise agreed to by you and us and except for lawful rent increases. At any time reasonable changes may be made to apartment rules.

34.   **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the lease or any renewal term. You will still be liable for the entire Lease Term if you move out early (Paragraph 3), except under the military clause (Paragraph 27).   YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

(a)   Your move-out notice must be in writing. Oral move-out notices will not be accepted and will not terminate your Lease.

(b)   Your move-out notice must not terminate the Lease sooner than the end of the Lease Term or renewal period.
However, if a move-out notice is received on the first day of a month, it will suffice for move-out on the last day of the month of intended move-out, provided that all other requirements above are met.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain written acknowledgement from our representative that we received your move-out notice. If we terminate the Lease, we must give you the same advance notice — unless you are in default.

35.   **MOVE-OUT PROCEDURES.** The move-out date cannot be changed unless you and we both agree in writing. You will not move out before the Lease Term or renewal period ends unless all rent for the entire Lease Term or renewal period is paid in full. You are prohibited by law from applying any security deposit to rent. You will not stay beyond the date you are supposed to move out. All Residents, guests, and Occupants must vacate the Apartment on or before the vacate date specified in the notice to vacate. You must give us and the U.S. Postal Service, in writing, each Resident's forwarding address.

36.   **CLEANING UPON MOVEOUT.** You must thoroughly clean the Apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you do not clean adequately, you will be liable for reasonable cleaning charges – including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

37.   **MOVE-OUT INSPECTION.** If you notify us by certified mail at least fifteen (15) days prior to your specified move-out date of your intention to move, the date of the move, and your new address, you have the right to be present during our inspection of the Apartment (unless you

have been evicted, ejected, or have abandoned the Apartment).   Our representative has no authority to bind or limit us regarding deductions for repairs, damages or charges.  Any statements or estimates by our representatives or us are subject to correction, modification, or approval/disapproval before final refunding or accounting.

38.   **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.**  You will be liable for the following charges, if applicable:  unpaid rent; unpaid utilities; un-reimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the Apartment and is missing; replacing dead or missing smoke detector batteries; utilities for repairs or cleaning; unreturned keys; missing or burned-out light bulbs; removing or re-keying unauthorized security devices or alarm systems; agreed re-letting charges; removing illegally parked vehicles; or expenses actually incurred in our lawful removal of an animal or in any valid eviction proceeding against you, plus reasonable attorneys' fees, court costs, and filing fees actually paid; and other sums due under this Lease.

You will be liable for (a) charges for replacing all keys and access devices provided at move-in or during your tenancy if you fail to return them on or before your actual move-out date; and (b) a re-letting fee if you have violated Paragraph 24.

39.   **SECURITY DEPOSIT RETURN.**  We will mail you your security deposit refund, plus accrued interest as provide under Maryland law (less lawful deductions of any unpaid rent or damages) and an itemized accounting of any deductions by first class mail to your last known address no later than forty-five (45) days after termination of your tenancy unless statutes provide otherwise.



**NOTIFICATION OF YOUR RIGHTS REGARDING SECURITY DEPOSITS.** Under Maryland Code 8-203, you have the following rights:

(a)      The security deposit or any portion of it may be withheld for unpaid rent, damage due to breach of lease or for damage by you or your family, agents, employees, guests or invitees in excess of ordinary wear and tear to the Apartment, common areas, major appliance, and furnishing owned by us.

(b)      You have the right to be present when we or our agent inspects the Apartment in order to determine if any damage was done to the Apartment, if you notify us by certified mail of your intention to move, the date of moving, and your new address.

(c)      Your notice requesting a move-out inspection in our presence must be furnished to us by certified mail at least fifteen (15) days prior to the date you move.

(d)      Upon receipt of your notice to move, we will notify you by certified mail of the time and date the Apartment is to be inspected.

(e)      The date of inspection shall occur within five days before or five days after the date of moving as designated in your notice.

40.   **RESIDENT SAFETY AND PROPERTY LOSS..**  You and all Occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices.  You agree to make every effort to follow the Security Guidelines found in this Lease.

**Smoke Detectors.** We will furnish smoke detectors as required by statute, and we will test them and provide working batteries when you first take possession. For as long as you reside in the Apartment, you must pay for and replace dead or missing batteries at your expense. A hard-wired backup has been installed; to the extent you are responsible, electrical service to your Apartment must be maintained at all times. You must immediately report smoke detector malfunctions to us. Neither you nor others may disable smoke detectors. If you damage or disable a smoke detector, or if you remove a smoke detector battery without replacing it with a working battery or fail to replace a dead battery or report malfunctions to us, you may be liable to us for all amounts authorized by state statute, plus actual damages, and attorneys' fees for any loss, damage, or fines from fire, smoke, or water. Such action will be deemed a material, non-remedial default under this Lease entitling us to terminate this Lease and obtain possession of the Apartment.

**Casualty Loss.** All personal property placed in the leased premises, storage room or in any other portion of said building or any place appurtenant thereto, shall be at the sole risk of the Resident or the parties owning the same, and Owner shall in no event be liable for the loss, destruction, theft or damage to such property from any cause whatsoever, except as provided by law. IT IS AGREED THAT THE OWNER SHALL NOT PROVIDE ANY INSURANCE OF ANY TYPE ON ANY PERSONAL PROPERTY OF THE RESIDENT. FURTHER, THAT THE RESIDENT IS REQUIRED TO OBTAIN, AT ITS OWN EXPENSE, MINIMUM LIABILITY INSURANCE COVERAGE OF $100,000. THE RESIDENT MUST ALSO KEEP THE REQUIRED INSURANCE ACTIVE DURING THEIR ENTIRE RESIDENCE AND PROVIDE A COPY OF THE UP TO DATE INSURANCE BINDER TO OWNER UPON REQUEST. THE RESIDENT MUST LIST OWNER AS "ADDITIONAL INTERESTED PARTY" ON SAID INSURANCE BINDER.

**Crime or Emergency.** Dial 911 or immediately call local medical, emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should also contact our representative. You will not treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we are not liable to you or any guests or Occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We are not obligated to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. If you are, or any Occupant or guest is, affected by crime, you must make a written report to our representative and to the appropriate law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Solicitation.** Solicitors are not permitted in the building and/or the apartment project. If you are solicited, you should notify the management office immediately.

41. **ORIGINALS AND ATTACHMENTS.** This Lease has been executed in multiple originals, with original signatures – one for you and one or more for us. Our rules and Apartment Community policies, if any, will be attached to the Lease and given to you at signing. When a Move-In Inspection Form is completed, both you and we should retain a copy.

42.   LOCAL LAWS AND ORDINANCES.  It is the intent of the parties to comply with the laws of Maryland, including local county and municipal ordinances.  The terms of this Lease may be modified by another addendum which conforms to the laws of the jurisdiction in which this Apartment Community is located. If there is any conflict in the terms of that addendum and this Lease, the conflicting terms of that other addendum shall control.  In the event no other addendum is attached to this Lease and the local laws or ordinances provide additional rights or remedies not included herein, this Lease is amended by reference to such local laws and ordinances to incorporate the terms, rights, or remedies thereof herein.  It is the intent of the parties to have this Lease construed to include any such rights or remedies herein, and the provision of such laws or ordinances shall supersede and control over any language of this Lease to the extent they are in conflict.  If any of the provisions of this Lease are found to be unenforceable or void, then you and we agree that such unenforceable lease provision shall be disregarded by the court, and the remaining enforceable provisions of this Lease will remain enforceable and binding on both you and us and will be enforceable to reflect the intent of the parties.

43.   SUBORDINATION, ATTORNMENT. This Lease is subordinate to all current and future recorded mortgages. This Lease shall be subject and subordinate at all times to the lien of any underlying ground leases, mortgages or deeds of trust now or hereafter placed by Landlord upon the Premises, and to any and all advances to be made thereunder, and to all renewals, replacements and extensions thereof.  This subordination shall be self-operative, and no further instrument or act on the part of Tenant shall be required to effectuate such subordination.  In confirmation thereof, Tenant shall within three (3) days of request execute such estoppel certificates as may be requested.  Any mortgagee or trustee under a deed of trust may elect that this Lease shall have priority over its mortgage or deed of trust and, upon notification of such election by such mortgagee or trustee to Tenant, this Lease shall be deemed to have priority over such mortgage or deed of trust whether this Lease is dated prior to or subsequent to the date of such mortgage or deed of trust.  If the Premises are conveyed, or any proceedings are brought for the foreclosure of the Premises, or if the power of sale under a mortgage or deed of trust is exercised, then Tenant, upon request, shall attorn to the new Landlord or purchaser upon such foreclosure or sale and recognize such new Landlord or purchaser as Landlord under this Lease.  Tenant hereby appoints Landlord to be the attorney-in-fact of Tenant (which appointment is irrevocable and coupled with an interest) to execute and deliver any such instrument or instruments for and on behalf of and in the name of Tenant for the purposes contained herein.

44.   LANDLORD'S WARRANTY.  The Landlord expressly warrants habitability and that at all times during the tenancy will comply with all applicable provisions of any Federal, State, County, or municipal code, regulations, or ordinance governing the maintenance, construction, use, or appearance of the apartment and the property of which it is a part.

45.   TENANT'S RESPONSIBILITIES.  In addition to the other terms of this Lease, you are responsible for complying with all obligations imposed upon you by applicable provisions of all State and County statutes, regulations and ordinances, and in particular:

(a)   Keep the apartment clean and sanitary;

(b)   Dispose from the dwelling unit all rubbish, garbage, and other organic and flammable waste, in a clean and sanitary manner;

(c)     Keep all plumbing fixtures clean and sanitary;

(d)     Properly use and operate all electrical and plumbing fixtures;

(e)     Prevent any person you have permitted to enter the premises from willfully or wantonly destroying, defacing, damaging, impairing or removing any part of the structure or dwelling unit or the facilities, equipment or appurtenances thereto, nor engaging in any such activity yourself;

(f)     Comply with all legal covenants and rules imposed by the Landlord which preserve the property and persons of the Landlord, other tenants or other person;

(g)     Refrain from interfering with the rights of other tenants to peacefully enjoy the use and occupancy of the premises;

(h)     Provide to the Landlord a copy of the key necessary to gain access to the premises if locks have been added, altered or changed by you from the date of this Lease.


46.     **EQUIPMENT PROVIDED BY LANDLORD.**  The Landlord shall provide the following to the Tenant (items provided are checked):

☐ heat                          ☐ air-conditioning

☑ water                         ☑ hot water

☑ stove/oven                    ☑ dishwasher

☑ washer                        ☑ dryer

☐ dehumidifier                  ☑ garbage disposal

☐ other:_____               ☐ other:_____


47.     **OTHER SERVICES PROVIDED BY LANDLORD:**  The Landlord shall provide the following additional services:

☑ trash dumpster                ☐ ground maintenance

☑ maintain fixtures, furniture, hot water, heating and A/C equipment

☑ keep common areas reasonably clean

☐ other:_____

☐ other:_____


48.     **NON-RETALIATION.**  Pursuant to Maryland Real Property Code Section 8-208.1, the Landlord shall not evict you or arbitrarily increase your rent or decrease the services to which you have been entitled for any of the following reasons:

16

(1)    Solely because the tenant or tenant's agent has filed a good faith written complaint, or complaints, with the landlord or with any public agency or agencies against the landlord;

(2) Solely because the tenant or the tenant's agent has filed a lawsuit, or lawsuits, against the landlord; or

(3) Solely because the tenant is a member or organizer of any tenants' organization.

49.    RENT ESCROW.    Rent escrow is a legal action that may be brought by you if the Landlord fails to repair dangerous conditions in the apartment or apartment complex.  This legal action allows you to pay rent into an account maintained by the court, instead of to the Landlord, until the conditions are repaired.  The rent escrow court can be used to fix conditions in the rental housing that are of a serious danger to you or your occupants life, health or safety, such as lack of heat, light, electricity or running water, lack of adequate sewage disposal, rodent infestation, structural defects that create a serious or substantial threat to your safety, or any condition that is a health or fire hazard.

50.    EMERGENCY CONTACT INFORMATION.  In the event of an emergency affecting the health, safety, or welfare of any tenant or any property thereof, you may call the following 24-hour telephone number/answering service: ~~XXXXXXXXX~~

You are legally bound by this Apartment Lease Contract. Read this document carefully before signing. You will receive a copy after it is fully signed.

Resident or Residents *(all sign below)*                    The Owings Chase Apartments

_____                    By: _____
(Resident)                                                          Landlord's Representative

_____
(Resident)

_____
(Resident)

_____
(Resident)



U.S. POSTAGE PAID
FCM LG ENV
WASHINGTON, DC
2017
NOV 12, 20
AMOUNT
**$3.20**
R2304M110830-45

21202

1000

7020 0090 0001 5919 9187

Phillip Chalker
217 W. Charles St.
FL 2.
Baltimore, MD 21701

CSC- Lawyers Incorporating Service Co.
7 St. Paul St.  Suite 820
Baltimore, MD 21202